IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY – (Lexington)

| | | |
|---|---|---|
| **ANDREW COOPERRIDER**, et. al. | : | Case No.: 5:22-cv-00124 |
| Plaintiffs | : | |
| v. | : | |
| **DON BLEVINS, JR.**, et. al. | : | |
| Defendants | : | |

### PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER, WITH VERIFIED COMPLAINT IN SUPPORT AND REQUEST FOR A PRELIMINARY INJUNCTION FOR THE NOVEMBER, 2022 ELECTION ON THE SAME BASIS

Plaintiffs Andrew Cooperrider, Cooperrider for Senate, and Richard Hayhoe, through Counsel, respectfully request a temporary restraining order be issued on their behalf, pursuant to FRCP 65, which permits them to engage in electioneering near polling locations, provided they remain more than 100 feet from the entrance to any building.

A Memorandum in Support is attached hereto, and a proposed order has been tendered.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com
**Attorney for Plaintiffs**

### CERTIFICATION UNDER FRCP 65

Pursuant to FRCP 65(b)(1)(A), the Temporary Restraining Order, precluding Defendants from enforcing their interpretation of a state statute beyond that permitted by state law, and infringing upon the rights of the Plaintiffs, should be granted without notice because the rights involved are irreparable, as explained in the attached Memorandum in Support and Verified

1

Complaint, the infringement of First Amendment rights are irreparable, and are occurring in the midst of a campaign; Defendants were given notice of this filing prior to it by e-mail, and have been served with a copy of this as soon as these moving papers were ready. Given time constraints and the significant consequences to these Plaintiffs at stake, additional notice was not feasible.

/s/ Christopher Wiest<br>Christopher Wiest (KBA 90725)

## MEMORANDUM IN SUPPORT

**I.  FACTS**

The Parties

Plaintiff Andrew Cooperrider ("Cooperrider") is a citizen and resident of Fayette County, Kentucky. (Pl.'s Ver. Compl., DE#1, ¶2). He is a candidate on the May 17, 2022 primary ballot as a Republican for State Senate District 22. *Id.* Plaintiff Cooperrider for Senate Campaign is the official campaign of Cooperrider for the seat. (*Id.* at ¶3). Plaintiff Richard Hayhoe is a volunteer for the Cooperrider for Senate Campaign, who is a citizen and resident of Grant County, Kentucky. (*Id.* at ¶4).

Defendant, Don Blevins, Jr., is the duly elected and installed Fayette County Clerk. Pursuant to Kentucky law, he has certain responsibilities related to the administration of elections, and specifically for the administration of such elections in Fayette County, Kentucky. (*Id.* at ¶5). Specifically, pursuant to KRS 117.235(5), the County Clerk may enforce prohibitions against electioneering. (*Id.*). Blevins is sued in his official capacity for declaratory and injunctive relief, and his individual capacity for money damages, including nominal damages. (*Id.*).

Defendant, Kathy Witt, is the duly elected and installed Fayette County Sheriff. (*Id.* at ¶6). Pursuant to Kentucky law, she has certain responsibilities related to the enforcement of certain election laws, and specifically for the enforcement of such laws in Fayette County,

Kentucky. (*Id.*). Specifically, pursuant to KRS 117.235(5), the County Sheriff may enforce prohibitions against electioneering. (*Id.*). Witt is sued in her official capacity for declaratory and injunctive relief. (*Id.*). Defendant, Rodrick Washington, is a duly appointed Lt. Colonel with the Fayette County Sheriff's office. (*Id.* at ¶7). Pursuant to Kentucky law, he has certain responsibilities related to the enforcement of certain election laws, and specifically for the enforcement of such laws in Fayette County, Kentucky. (*Id.*). Specifically, pursuant to KRS 117.235(5), he may enforce prohibitions against electioneering. (*Id.*). Washington is sued in his official capacity for declaratory and injunctive relief, and his individual capacity for money damages, including nominal damages. (*Id.*).

## Facts underlying the claims

Cooperrider and the Cooperrider for Senate campaign have been conducting a vigorous campaign for months leading up to the May 17, 2022 primary. (*Id.* at ¶10). They have dozens of volunteers who have canvassed Senate District 22. (*Id.*). Over $300,000, largely in special interest money, has been spent against Cooperrider and the Cooperrider for Senate Campaign. (*Id.* at ¶11). Meanwhile, the Cooperrider for Senate Campaign amassed over $120,000 in small dollar donations from hundreds of everyday Kentuckians. *Id.*

In the same vein, Cooperrider and the Cooperrider for Senate Campaign have bridged the money gap by door-to-door campaigns, and other grassroots efforts in the months leading to the May 17, 2022 primary. (*Id.* at ¶12). One of the critical ways that Cooperrider and the Cooperrider for Senate Campaign planned to bridge the money gap, was to post volunteers outside polling locations on election day, at a legally-appropriate distance. (*Id.* at ¶13).

On May 16, 2022, Cooperrider and the Cooperrider for Senate Campaign measured distances from the entrance of each polling location Garrard, and Jessamine Counties, as well as

those precincts in Fayette County that comprised the 22nd State Senate District. (*Id.* at ¶14). They conducted these measurements to ensure that the campaign's volunteers would stand at least 105 feet back from any entrance, and generally posted the volunteers on the nearest public sidewalk (but no closer than the 105-foot mark) ("Legally Permitted Space"). (*Id.* at ¶15).

On May 17, 2022, volunteers were placed at each polling location in Garrard, and Jessamine Counties, as well as those precincts in Fayette County that comprised the 22nd State Senate District, at the Legally Permitted Space. (*Id.* at ¶16). The volunteers engaged in electioneering, within the Legally Permitted Space, in the following ways: they wore campaign materials (t-shirts, buttons, etc), had literature for voters who asked them for it, and had Cooperrider for Senate signs that they waved. (*Id.* at ¶17).

Further, presuming he prevails in the May, 2022 primary, Cooperrider, Cooperrider for Senate, and Plaintiff Hayhoe all intend to engage in electioneering in the November, 2022 election within the Legally Permitted Space in precincts comprising the district in Fayette County. (*Id.* at ¶18).

KRS 117.235, the State's electioneering statute, was revised after extensive litigation enjoining the prior iteration of that statute, in *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1050 (6th Cir. 2015). (*Id.* at ¶19). *Russell* struck down the prior version of the statute, which prohibited electioneering within 300 feet of any polling location, including any private property location that fell within that zone regardless of distance under the First Amendment. *Id.* In *Russell*, the Sixth Circuit suggested that restrictions outside of those approved by the Supreme Court in *Burson v. Freeman*, 504 U.S. 191 (1992), which allowed the regulation of electioneering 100 feet from the entrance of polling locations, would be viewed skeptically. *Id.*

KRS 117.235(3) now provides, in relevant part:

4

(3) (a) No person shall electioneer at the polling place on the day of any election, as established in KRS 118.025, or within a distance of one hundred (100) feet of any entrance to a building in which voting is conducted if that entrance is unlocked and is used by voters on any primary or election day.

(b) No person shall electioneer within the interior of a building or affix any electioneering materials to the exterior or interior of a building where the county clerk's office is located, or any building designated by the county board of elections and approved by the State Board of Elections for in-person absentee voting, during the hours in-person absentee voting is being conducted in the building.

(c) No person shall electioneer within one hundred (100) feet of a mail-in absentee drop-box or drop-receptacle.

(d) Electioneering shall include the displaying of signs, the distribution of campaign literature, cards, or handbills, the soliciting of signatures to any petition, or the solicitation of votes for or against any bona fide candidate or ballot question in a manner which expressly advocates the election or defeat of the candidate or expressly advocates the passage or defeat of the ballot question, but shall not include exit polling, bumper stickers affixed to a person's vehicle while parked within or passing through a distance of one hundred (100) feet of any entrance to a building in which voting is conducted, private property as provided in subsection (7) of this section, or other exceptions established by the State Board of Elections through the promulgation of administrative regulations under KRS Chapter 13A.  (KRS 117.235(3); *Id.* at ¶20).

On May 17, 2022, Defendant Blevins personally called Cooperrider, and directed that he remove all volunteers from any real property that contained a polling location – even though he knew, and acknowledged, that the volunteers were located well over 100 feet from the entrance of any polling location. (*Id.* at ¶21). He personally threatened Cooperrider with criminal enforcement through the Sheriff's office, and administrative/civil enforcement if Cooperrider did not comply (actually, the threats went beyond that, he threatened Cooperrider with such enforcement even if he complied for the alleged past non-compliance). *Id.*

Blevins then followed up by calling the Kentucky Attorney General's election hotline, to attempt to make good on his threat. (*Id.* at ¶22).

In 2020, the Kentucky Attorney General was clear that the polling location is the building where polling occurs. OAG 20-16, 2020 KY. AG LEXIS 465. It was clear that: "Thus, on

5

Election Day, electioneering is prohibited within 100 feet of any entrance to a polling place." (emphasis in original).  (*Id.* at ¶23).

Blevins was sent correspondence from the undersigned, attempting to cause him to cease his unconstitutional activity, but he persists.  (*Id.* at ¶24).  Blevins argued that the "polling place" under KRS 117.235 included any real property that contained a building where voting was going to occur, even though such real property was not within a building, and even if it were hundreds of feet from the entrance of any such building.  (*Id.* at ¶25).

Following this, Sheriff's deputies with the Fayette County Sheriff's Office likewise dispersed Cooperrider for Senate candidates, all of whom were located in the Legally Permitted Space, and none of whom were within or even at the 100-foot mark from the entrance of any polling location.  (*Id.* at ¶26).

Specifically, Plaintiff Richard Hayhoe was volunteering for the Cooperrider for Senate campaign on May 17, 2022.  (*Id.* at ¶27).  The campaign stationed him at 1139 Tanbark Road, Lexington, KY, the Twin Pines Christian Church.  (*Id.*).  Hayhoe was located 105 feet from the entrance of the polling location (again, it was measured), on pavement.  (*Id.*).  He was engaged in electioneering, wearing a campaign t-shirt, with literature and a campaign sign.  (*Id.*).

Defendant Rodrick Robinson personally approached Hayhoe, and threatened him with arrest if he did not cease electioneering.  (*Id.* at ¶28).  Hayhoe volunteered to cross the street and stand on the sidewalk, but Robinson told him that it was election day, and this was illegal also, and if he crossed the street and did so, he would be arrested.  (*Id.*).  Hayhoe ceased his electioneering in light of these express threats.  (*Id.*)

## II.  LAW AND ARGUMENT

### A.  Standard

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) Whether the movant has demonstrated a strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public interest would be served by issuance. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998); *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Clear Sixth Circuit law establishes that the remaining factors are met where constitutional rights are infringed upon, and so, in these cases, the likelihood of success factor is dispositive. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights); *Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others, even where registry incurred printing costs, where constitutional rights at stake); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). *See, also, Elrod v. Burns*, 427 U. S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

### B. Law and Argument

1. <u>Blevins, Witt, and Robinson violated the First Amendment, and injunctive relief should issue</u>

7

Blevins, Witt, and Robinson are enforcing their interpretations regarding a statute about electioneering against the Plaintiffs, (in the case of Hayhow, even across the street from a polling location), even though it includes sidewalks, which are traditional public forums. *McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012).  That is true, regardless of who actually owns or maintains these walkways that are open to the public. *Id.*  Where a private "[s]idewalk blends into the urban grid, borders the road, and looks just like any public sidewalk" the Court has characterized such a sidewalk as a traditional public forum. *United Church of Christ v. Gateway Econ. Dev. of Greater Cleveland, Inc.*, 383 F.3d 449 (6th Cir. 2004).

Here, Plaintiffs conducted these measurements to ensure that the campaign's volunteers would stand at least 105 feet back from any entrance, and generally posted the volunteers on the nearest public sidewalk (but no closer than the 105-foot mark) ("Legally Permitted Space"). (Ver. Compl., DE#1, at ¶15).

In 2015, the Sixth Circuit Court of Appeals struck down, on First Amendment grounds, Kentucky's previous electioneering statute (which had a 300-foot prohibition from the entrance to a polling location). *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1050 (6th Cir. 2015). "Buffer-zone laws prohibit political speech around polling places on Election Day." *Id.* "Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* "The burden for justifying such restrictions on speech falls entirely upon the government." *Id.* Political speech "concerning public affairs is more than self-expression; it is the essence of self-government." *Id.* at 1051 (citations omitted). "In the context of elections, 'it is our law and our tradition that more speech, not less, is the governing rule.'" *Id.* (citations omitted). Indeed, "the First Amendment has its fullest and most urgent application to speech uttered during

8

a campaign for political office." *Id.* "The right against voter intimidation is the right to cast a ballot free from threats or coercion; it is not the right to cast a vote free from distraction or opposing voices." *Id.*

In *Russell*, the Plaintiff desired to "to walk across the highway and stand on the grass in front of the Polling Place between 200 and 300 feet from its entrance . . . to waive [sic] or hold [] signs" and hand out literature to any voter who requests it. *Id.* at 1044.

The Sixth Circuit invalidated the 300-foot prohibition in *Russell*, and looked to the Supreme Court's treatment in *Burson v. Freeman*, 504 U.S. 191 (1992), which permitted the regulation of electioneering 100 feet from the entrance of polling locations as the example.

We take no issue here with the 100-foot-from-the-entrance restriction in KRS, nor on private property outside the 100-foot circle. But public sidewalks? Those are protected, and Defendants actions violated the First Amendment in that regard. *Russell*, 784 F.3d 1037, 1050.

Having demonstrated a likelihood of success on the merits, the remaining factors collapse, including irreparable harm, *City of Detroit*, 568 F.3d 609; *Beshear*, 957 F.3d 610; *Elrod*, 427 U.S. 347, 373. And balance of harms and public interest likewise collapses when the government is the Defendant. *Martin-Marietta Corp.*, 690 F.2d 558, 568; *G & V Lounge*, 23 F.3d 1071, 1079.

### III. CONCLUSION

Plaintiffs seek a temporary restraining order and preliminary injunction. A proposed order is attached.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104

        Crestview Hills, KY 41017
        513/257-1895 (c)
        859/495-0803 (f)
        chris@cwiestlaw.com
        **Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by CM/ECF, this 17 day of May, 2022, will serve all parties by ordinary U.S. mail, and by electronic mail to Defendants.

        /s/ Christopher Wiest_____
        Christopher Wiest (KBA 90725)